UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT WESLEY HAWKEY,

                Plaintiff,

v.                                    5:15-CV-0996
                                    (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                        OF COUNSEL:

OLINSKY LAW GROUP                HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.       SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 18.) This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Robert Wesley

Hawkey ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 16, 17.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 4, 1965. (T. 144.) He completed the ninth grade. (T. 178.) Generally, Plaintiff's alleged disability consists of arthritis, anxiety, post-traumatic stress disorder ("PTSD"), and "loss of spleen." (*Id.*) His alleged disability onset date is January 1, 2007. (T. 166.) He previously worked as a painter. (T. 170.)

### B. Procedural History

On February 8, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 166.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 20, 2013, Plaintiff appeared before the ALJ, Lisa B. Martin. (T. 34-60.) On February 20, 2014, ALJ Martin issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-33.) On June 12, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 22-29.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 8, 2012. (T. 22.) Second, the ALJ found that

Plaintiff had the severe impairments of bilateral carpal tunnel syndrome with hand and forearm pain; left knee pain status post injury and replacement; cervical and lumbar spine disorder status post remote motor vehicle accident; chronic pain from motor vehicle accident; depression; and PTSD. (*Id.*) The ALJ determined that Plaintiff's emphysema was non-severe. (T. 22.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22-24.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work except Plaintiff required:

> a sit-stand option with a change of position opportunity as often as every 30 minutes for one to two minutes. [Plaintiff] is precluded from climbing ladders, ropes, and scaffolding, and no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. [Plaintiff] must also avoid constant fingering and feeling tasks, dangerous work hazards including unprotected heights and exposed machinery. Overall, [Plaintiff] is limited to routine, uninvolved tasks because of pain and mental health distractions preventing detailed decision making. [Plaintiff] must also avoid fast assembly quota and having more than occasional required work interactions with coworkers, supervisors, and the general public.

(T. 24.)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 28-29.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to follow the treating physician rule.  (Dkt. No. 16 at 10-17 [Pl.'s Mem. of Law].)   Second, and lastly, Plaintiff argues that the ALJ's step five determination was not supported by substantial evidence.  (*Id.* at 17-18.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues that the ALJ properly evaluated the medical opinion evidence in determining Plaintiff's RFC. (Dkt. No. 17 at 9-19 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues that the ALJ properly found Plaintiff could perform jobs that existed in significant numbers in the national economy.  (*Id.* at 19-22.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of
> the specified impairments in the Listing of Impairments; (4) based on a
> 'residual functional capacity' assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.    The ALJ's Evaluation of the Medical Evidence in the Record and RFC Determination

Plaintiff's RFC is the most he can do despite his limitations.  *See* 20 C.F.R. §

416.945(a).  The ALJ will assess Plaintiff's RFC based on all of the relevant medical

and other evidence, including statements about Plaintiff can still do.  *Id.* at §

416.945(a)(3).

The relevant factors considered in determining what weight to afford an opinion

include the length, nature and extent of the treatment relationship, relevant evidence

which supports the opinion, the consistency of the opinion with the record as a whole,

and the specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §

416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff essentially argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly assess the opinion evidence provided by Plaintiff's treating source, Jeffery Wike, M.D. and the consultative examiners. (Dkt. No. 16 at 10-17 [Pl.'s Mem. of Law].)

Before a discussion of the medical evidence and subsequent RFC, it should first be noted that there are inconsistencies in the ALJ's decision regarding the exertional level at which Plaintiff could perform work. The ALJ stated that Plaintiff could perform a "full range of light work as defined in 20 C.F.R. § 416.967(a)." (T. 24.) However, 20 C.F.R. § 416.967(a) provides the definition of sedentary work. Defendant acknowledged the ALJ's error here; however, deemed it a typographical error. (Dkt. No. 17 at 8 n.4 [Def.'s Mem. of Law].) A simple typographical error could be overlooked; however, elsewhere in her decision the ALJ made contradicting statements regarding Plaintiff's RFC, classifying it as both light and sedentary work. The ALJ stated that Dr. Wike found Plaintiff capable of "light work," but based on Plaintiff's testimony she

"reduced [Plaintiff] to work at the light exertional level." (T. 26.) The ALJ's statement is internally inconsistent, and as discussed in greater detail herein, Dr. Wike's statement was more in line with sedentary work, not light. In the conclusion of her RFC analysis, the ALJ stated that Plaintiff was able to "perform light work." (T. 27.) However, in her step five analysis the ALJ stated that "[i]f [Plaintiff] had the [RFC] to perform sedentary work, a finding of not disabled would be directed by Medical-Vocational Rule 201.21. However, [Plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (T. 28.)

To be sure, the ALJ's decision contains contradictory statements regarding the exertional level of work that Plaintiff could perform. However, after careful consideration of the ALJ's decision on a whole, and the evidence in the record, these errors can be classified as harmless. Courts are instructed to review administrative decrees in light of "the rule of prejudicial error" and to disregard all administrative errors and defects not affecting "substantial rights," also referred to what modern jurisprudence calls "harmless error doctrine." *See Shinseki v. Sanders,* 556 U.S. 396, 406-08, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009). Under this doctrine, a reviewing court must reverse and remand when an ALJ errs unless, as a matter of law, the result was not affected by the error. *See NLRB v. Enterprise Assoc.,* 429 U.S. 507, 522 n. 9, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977). In other words, administrative legal error is harmless when the same result would have been reached had the error not occurred. *See Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

As an initial matter, the ability to perform light work also encompasses an ability to perform sedentary work, absent additional factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).  The ALJ's RFC provided additional non-exertional limitations, specifically a sit/stand option, which would affect the sitting, standing, and walking requirements of either light or sedentary work.  (T. 24.) In other words, the ALJ's RFC for light work with additional exertional impairments reduced Plaintiff's RFC to such a degree that, according to vocational expert ("VE") testimony, he could perform occupations at the sedentary level.  (T. 52-54.)  Of note, the VE indicated that there were no "light jobs" available for someone with Plaintiff's age, education, work experience, and RFC.  (T. 54.)

The ALJ relied on the VE testimony in making her step five determination based on a hypothetical that reflected her ultimate RFC determination for light work with additional limitations; therefore, any error committed by the ALJ in her apparent inadvertent substitution of the terms light and sedentary would be harmless.  Plaintiff does not raise these inconsistencies in his brief, nor does he argue that the ALJ's inconsistent use of terminology prejudiced him or affected his substantial rights. Despite these errors the Court was able to properly discern the ALJ's reasoning for affording weight to the medical opinion evidence in the record.  Further, for the reasons outlined herein, the ALJ properly assessed the medical opinion evidence in the record in formulating her physical and mental RFC determinations and her determinations were supported by substantial evidence.

    **i.)**    **Physical RFC**

On November 29, 2013, Dr. Wike completed a physical medical source statement. (T. 468-470.) Dr. Wike indicated that Plaintiff suffered from PTSD, stress disorder, complex regional pain syndrome, and cervical spine intervertebral disc degeneration. (T. 468.)

Dr. Wike provided an opinion regarding Plaintiff's functional limitations. He stated Plaintiff was able to sit for thirty minutes at one time and stand for thirty minutes at one time before needing to change position. (T. 468.) He opined that Plaintiff could stand/walk for a total of "about" four hours and sit for a total of "about" four hours in an eight hour workday. (T. 469.) He opined that Plaintiff could lift and carry less than ten pounds frequently, ten to twenty pounds occasionally, and never fifty pounds. (*Id.*)

Dr. Wike provided the following non-exertional limitations. He opined that Plaintiff should rarely: twist, stoop, bend, crouch, squat, or climb stairs. (T. 469.) He opined that Plaintiff should never climb ladders. (*Id.*) He opined that Plaintiff could never hold his head in a static position. (*Id.*) He stated that Plaintiff could rarely look down and rarely look up. (*Id.*) He stated that Plaintiff could occasionally turn his head right or left. (*Id.*) Regarding the use of his hands, Dr. Wike opined that Plaintiff could frequently handle and finger, and occasionally reach. (*Id.*)

Dr. Wike stated that Plaintiff would require unscheduled breaks every one to two hours for ten to fifteen minutes. (T. 470.) Dr. Wike indicated that Plaintiff would be "off task" 20% of the work day and would be absent more than four days per month. (*Id.*)

On May 14, 2012, Elke Lorensen, M.D. performed a consultative examination. (T. 379-382.) On examination, Plaintiff had a normal gait, could walk on heels and toes, could squat 80%, had a normal stance, needed no assistive devices, needed no help

changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 380.) Dr. Lorensen observed that Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally; and full rotary movement bilaterally. (T. 381.) Plaintiff's lumbar spine had flexion to 80 degrees, and full extension. (*Id.*) Dr. Lorensen stated Plaintiff had negative straight leg raises bilaterally. (*Id.*) She observed Plaintiff had full range of motion in his shoulders, elbows, and forearms. (*Id.*) She noted Plaintiff had decreased dorsiflexion and palmar flexion. (*Id.*) Plaintiff had full range of motion in his hips. (*Id.*) He had decreased range of motion in his right knee and left knee. (*Id.*) Neurologically, Dr. Lorensen observed that Plaintiff had no sensory deficits and full strength. (*Id.*) Dr. Lorensen noted Plaintiff's hand dexterity was intact, his grip strength on the left was 5/5 and on the right was 4.5/5. (T. 382.)

Based on her examination, Dr. Lorensen opined that Plaintiff had mild restrictions for handling objects with his right hand, mild restrictions for kneeling on the left knee, mild restrictions for using the right hand, and he should avoid smoke, dust, and other respiratory irritants. (T. 382.)

In her evaluation of the medical opinion evidence in the record, the ALJ afforded "light weight" to Dr. Wike's opinion regarding Plaintiff's physical limitations and "some weight" to Dr. Lorensen's opinion. (T. 26-27.)

Plaintiff argues that the ALJ erred in his assessment of Dr. Wike's opinion regarding Plaintiff's physical limitations because contrary to the ALJ's reasoning, Dr. Wike's opinion was consistent with treatment records and supported by objective medical tests. (Dkt. No. 16 at 13-15 [Pl.'s Mem. of Law].)

First, the ALJ adhered to the Regulations in assessing the opinion evidence provided by Dr. Wike.  Contrary to Plaintiff's assertion, the ALJ did set forth in the Regulations used in assessing medical opinion evidence in her decision.  (Dkt. No. 16 at 15 [Pl.'s Mem. of Law].)  The ALJ's decision stated that she reviewed the evidence in accordance with 20 C.F.R. § 416.927, as well as other pertinent Regulations.  (T. 24.)

In addition, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").  The ALJ acknowledged in her decision that Dr. Wike was Plaintiff's primary care physician in accordance with 20 C.F.R. § 416.927(c)(2)(i).  (T. 23.)  In her analysis of Dr. Wike's opinion regarding Plaintiff's physical impairments, the ALJ reasoned that overall his opinion was inconsistent with his own treatment notations and Plaintiff's reported activities.  (T. 26); *see* 20 C.F.R. § 416.927(c)(2).  The ALJ reasoned that Dr. Wike's limitations were inconsistent with his own treatment notations, specifically notations reading Plaintiff's grip, knees, and cervical spine.  (T. 26.)  Therefore, contrary to Plaintiff's contentions, the ALJ did rely on, and apply, the factors outlined in 20 C.F.R. § 416.927(c)(2). Although the ALJ did not recite each and every factor, her reasoning and adherence to the Regulations was clear.

Second, although the ALJ afforded Dr. Wike's opinion "light weight," the ALJ incorporated many of the physical limitations imposed by Dr. Wike into the RFC

determination. The ALJ ultimately concluded that Plaintiff required a sit/stand option with an opportunity to change position as often as every thirty minutes. (T. 24.) The sit/stand option was consistent with Dr. Wike's opinion that Plaintiff could sit for about four hours in a workday and stand/walk about four hours in a workday, but required the option to shift positions at will. (T. 469.) Dr. Wike opined that Plaintiff could sit for thirty minutes at one time and stand for thirty minutes at one time. (T. 468) This limitation was also consistent with Plaintiff's testimony that he could only sit and stand for thirty minutes to one hour before needing to change position and that although it made him "a little more stiff" he was able to fish which meant spending most of his days sitting or standing in his boat. (T. 47, 422.)

Although the ALJ determined Plaintiff could perform light work, the vocational expert ("VE") ultimately opined that based on a person with Plaintiff's age, education, work experience, and RFC there were a significant number of sedentary occupations that person could perform. (T. 52-54.) Sedentary work requires lifting no more than ten pounds at a time and occasionally lifting or carrying less than ten pounds. 20 C.F.R. § 416.967(a). The ability to perform the lifting and carrying requirements of sedentary work was consistent with Dr. Wike's opinion that Plaintiff could frequently lift and carry less than ten pounds and occasionally carry up to twenty pounds. (T. 469.)

The non-exertional limitations imposed by the ALJ in her RFC determination were either supported by Dr. Wike's opinion, or any error to include Dr. Wike's limitations was harmless. The ALJ's RFC stated that Plaintiff could not climb ladders, ropes, and scaffolds. (T. 469.) Dr. Wike opined Plaintiff could "never" climb ladders. (T. 24.) The ALJ limited Plaintiff to "occasional" climbing ramps and stairs, balancing,

stooping, kneeling, crouching, and crawling. (T. 24.) Dr. Wike opined that Plaintiff could "rarely" twist, stoop/bend, crouch/squat, or climb stairs. (T. 469.) However, any error on the ALJ's part to include Dr. Wike's postural limitations would be harmless because the occupations provided by the VE do not require that Plaintiff perform those movements.

At the hearing the VE testified that based on the ALJ's hypothetical, which ultimately became her RFC determination, a person of Plaintiff's age, education, and work experience could perform the sedentary occupations of document preparer (DOT # 249.587-018) or surveillance system monitor (DOT # 379.367-010). (T. 52-54.) The Dictionary of Occupational Titles ("DOT") states that climbing, balancing, stooping, kneeling, crouching, and crawling are "not present" in the occupations of document preparer or surveillance system monitor. DICOT 249.587-018, 379.367-010. Therefore, even had the ALJ's RFC accounted for Dr. Wike's limitations in this area, Plaintiff could still perform the occupations provided by the VE.

The ALJ's manipulative limitations were also consistent with Dr. Wike's opinion. The ALJ determined that Plaintiff must avoid "constant" fingering and feeling tasks. (T. 24.) This limitation was consistent with Dr. Wike's opinion that Plaintiff could "frequently" handle and finger. (T. 469.) The ALJ's RFC determination regarding manipulative limitations was also supported by Dr. Lorensen's opinion that Plaintiff had mild restrictions for handling objects with the right hand and mild restrictions for using the right hand. (T. 382.) Further, any error would again be harmless, as the occupations of surveillance system monitor does not require handling, fingering, or

feeling.  DICOT 379.367-010.  The occupation of document preparer requires "frequent" handling and fingering, consistent with the ALJ's RFC.  DICOT 249.587-018.

Plaintiff specifically argues that the ALJ erred in her assessment of Dr. Wike's opinion regarding Plaintiff's neck limitations.  (Dkt. No. 16 at 14-15 [Pl.'s Mem. of Law].)  The ALJ reasoned that Dr. Wike's opinion; that Plaintiff could rarely look down or look up, could not hold his head in a static position, and could only occasionally turn his head left and right, was not supported by his treatment notes because notations failed to show abnormal findings and the limitations were not supported by objective medical imaging because imaging showed "mild" degeneration.  (T. 26.)

To be sure, Dr. Wike's treatment notations contain complaints of neck pain and reported tenderness and range of motion with discomfort.  (T. 418, 422-423, 428, 430-431, 432, 443, 448-449, 451.)  Notations also revealed full range of motion in Plaintiff's neck.  (T. 376, 446, 449, 451-452, 454, 457, 459.) [2]  Overall, substantial evidence supported the ALJ's determination to not afford Dr. Wike's limitations regarding Plaintiff's neck greater weight.

First, although Dr. Wike's notations did include notations of pain and limited range of motion with discomfort, the notations indicated at most mild pain and restrictions and did not support the opinion that Plaintiff could "never" hold his head in a static position.  The objective medical evidence, an X-ray taken in August of 2012, indicated mild to moderate disc space narrowing at C5-6 and mild narrowing at the C6-7

---

[2]       Dr. Wike's notations are internally inconsistent.  For example, on February 7, 2013, Dr. Wike notes under the heading of "Neck" in the "Objective" portion of his report that Plaintiff had full range of motion.  (T. 430-431.)  However, in the same report under the heading "Musculo: Head/Neck" Dr. Wike indicated "extension is with discomfort and limited movement[,] [l]eft rotation is with discomfort[,] [r]ight rotation is with limited movement."  (T. 431.)  Dr. Wike made similar notations in January 2013; first noting Plaintiff's neck had full range of motion and then noting discomfort and limited movement in Plaintiff's head/neck.  (T. 432.)

levels. (T. 440.) Here, the ALJ properly concluded that Dr. Wike's extreme limitations regarding Plaintiff's neck movements were inconsistent with the mild objective findings. *See Klosin v. Colvin*, No. 12-CV-1092S, 2014 WL 2945772, at *4 (W.D.N.Y. June 30, 2014) ("In light of the inconsistency between the extreme limitations opined by Dr. Clerk in his RFC assessment and the relatively mild objective findings reported in his own treatment notes, the ALJ correctly concluded that these opinions were inconsistent with the objective medical evidence in the record.")

Second, Plaintiff did not complain of neck pain or limitations to Dr. Lorensen and on examination Dr. Lorensen noted Plaintiff's cervical spine had full flexion, extension, later flexion bilaterally, and full rotary movement bilaterally. (T. 381.) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e); *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Plaintiff's activities and testimony also supported the ALJ's determination because his statements indicated that his neck limitations were not as severe as alleged. For example, in November of 2012, Plaintiff complained of increased neck soreness and stiffness due to his increase in activity during hunting season. (T. 441.) In May of 2013, Plaintiff complained of stiffness because he was spending most of his

days on his boat fishing.  (T. 422.)  Plaintiff testified that despite neck pain he was able

to drive to doctor's appointments, watch TV, and "look out the window" which indicated

that posturally he had the ability to move his neck as well as hold it in a static position.

(T. 50-51.)

Because Dr. Wike's opinion regarding Plaintiff's neck limitations was not

consistent with other substantial evidence in the record, including the opinions of other

medical experts, the ALJ was not obligated to give it controlling weight.  *See Halloran v.*

*Barnhart,* 362 F.3d 28, 32 (2d Cir.2004).

Overall, the ALJ's RFC determination was supported by Dr. Wike's medical

source statement.  Any error the ALJ may have made in failing to adopt additional

limitations regarding postural movements was harmless error because the VE ultimately

testified to occupations which did not require greater postural movements that allowed

for by Dr. Wike.  The ALJ properly concluded that Dr. Wike's extreme limitations

regarding Plaintiff's neck movements was inconsistent with objective medical evidence,

the opinion of Dr. Lorensen, and Plaintiff's testimony.  Therefore, it is recommended that

the ALJ's physical RFC determination be upheld.

**ii.)    Mental RFC**

Dr. Wike provided a medical source statement regarding Plaintiff's mental

limitations.  (T. 461-463.)  Therein he opined that Plaintiff was "seriously limited, but not

precluded" in his ability to: complete a normal workday and workweek without

interruptions from psychologically based symptoms; perform at a consistent pace

without an unreasonable number and length of rest periods; accept instructions and

respond appropriately to criticism from supervisors; and interact appropriately with the general public.  (T. 462.)

Dr. Wike opined that Plaintiff was "limited, but satisfactory" in his ability to: remember work like procedures, maintain attention and concentration for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain  an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; respond appropriately to change in a routine work setting; deal with normal work stress; maintain socially appropriate behavior; and travel in unfamiliar places.  (T. 462.)

Dr. Wike opined that Plaintiff was "unlimited or very good" in his ability to: understand and remember very short and simple instructions; carry out very short and simple instructions; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; and adhere to basic standards of neatness and cleanliness.  (T. 462.)

Dr. Wike indicated that Plaintiff would be "off task" more than 20% of a work day, he would have good days and bad, and he would be absent more than four days per month due to his impairments.  (T. 463.)

On May 14, 2012, Christina Caldwell, Psy.D. performed a consultative psychiatric examination.  (T. 383-387.)  On examination Dr. Caldwell observed that Plaintiff was cooperative; his overall manner of relating, social skills, and overall presentation was poor; and he sobbed during the examination.  (T. 384.)  Dr. Caldwell observed that Plaintiff's thought processes were coherent and goal directed, his affect was depressed,

his mood was dysthymic, and his sensorium was clear. (T. 385.) She noted Plaintiff's attention and concentration was intact; his recent and remote memory skills were intact; and his insight and judgment were fair to poor. (*Id.*)

In a medical source statement, Dr. Caldwell opined that Plaintiff was able to follow and understand simple directions and instructions; he was limited in his ability to perform simple task independently; he was able to maintain attention and concentration; he was limited in his ability to maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions; he was unable to relate adequately with others or appropriately deal with stress. (T. 386.)

The ALJ afforded Dr. Wike's opinion "some weight." (T. 27.) The ALJ concluded that Dr. Wike's limitations were accounted for in her RFC determination limiting Plaintiff to routine, uninvolved tasks, no fast assembly quota work, and occasional interactions with coworkers, supervisors, and the general public. (T. 24, 27.)

Plaintiff argues that the ALJ failed to account for Dr. Wike's opinion of "disabling limitations due to Plaintiff's susceptibility to episodes of severe anxiety and recurrent recollections of traumatic experiences." (Dkt. No. 16 at 15-16 [Pl.'s Mem. of Law].) However, the majority of Dr. Wike's limitations were incorporated in her mental RFC determination.

To be sure, Dr. Wike indicated that the limitations he imposed in the medical source statement were due to Plaintiff's episodes of severe anxiety and recurrent recollections. (T. 462.) However, Dr. Wike did not indicate, as Plaintiff contends, that those limitations were "disabling." (*Id.*) The only area in which Dr. Wike opined that Plaintiff would be "unable to meet competitive standards" was in his ability to use public

transportation.  (T. 462.)  Of note, the form completed by Dr. Wike also offered the options of "no useful ability to function" which Dr. Wike did not choose for any mental activity.  (*Id.*)

The form completed by Dr. Wike defined "seriously limited, but not precluded" as "the ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances."  (*Id.*)  In comparison, the term "unable to meet competitive standards" is defined as "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  (*Id.*)  Although Dr. Wike opined that Plaintiff was "seriously limited, but not precluded" in other areas, these limitations do not equate with a finding of "disabled" as Plaintiff asserts.

The ALJ took into consideration the limitations imposed by Dr. Wike.  For example, the ALJ limited Plaintiff to only occasional interaction with supervisors, coworkers, and the public based on Dr. Wike's opinion that Plaintiff was "seriously limited, but not precluded" in his ability to accept instructions and respond appropriately to criticism from supervisors and interact appropriately with the general public.  (T. 462.)  Of note, Dr. Wike indicated that Plaintiff's ability to interact with co-workers was "unlimited or very good;" and his ability to maintain socially appropriate behavior and work in coordination with or proximity to others was "limited, but satisfactory."  (*Id.*)

The ALJ's RFC determination was also consistent with Dr. Wike's limitations regarding Plaintiff's ability to deal with stress and work rate production.  The ALJ limited Plaintiff to routine tasks and no fast assembly work.  (T. 24.)  This limitations is consistent with Dr. Wike's opinion that Plaintiff was "limited, but satisfactory" in his

ability to deal with normal work stress, sustain an ordinary routine, and maintain attention and concentration for two hour segments.  (T. 462.)

Plaintiff also argues that the ALJ improperly evaluated Dr. Caldwell's opinion which Plaintiff contends supported Dr. Wike's opinions of "seriously disabling mental limitations."  (Dkt. No. 16 at 16 [Pl.'s Mem. of Law].)  The ALJ afforded Dr. Caldwell's opinion "some weight" reasoning that her opinion was in "sharp contrast" to Plaintiff's statements that he was feeling better on Zoloft and his mood was stable.  (T. 27.)

As outlined above, the ALJ's mental RFC determination was consistent with the majority of Dr. Wike's opinion.  Although Plaintiff contends that Dr. Wike's opinion equates to "seriously disabling mental limitations," it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

The ALJ determined that Dr. Wike's opinion that Plaintiff would be off task 20% of the day and absent more than four times a month was inconsistent with Plaintiff's testimony and activities of daily living, specifically his ability to fish and hunt.  (T. 27.)

Plaintiff again argues that the ALJ failed to follow the Regulations in evaluating Dr. Wike's opinion. (Dkt. No.16 at 15 [Pl.'s Mem. of Law].) However, as stated herein, the ALJ acknowledged that Plaintiff "received consistent treatment" from Dr. Wike in accordance with 20 C.F.R. § 416.927(c)(2). (T. 25.) In her decision to not adopt Dr. Wike's opinion that Plaintiff would be off task 20% of the day and be absent more than four days per month, the ALJ properly reasoned that this opinion was inconsistent with other evidence in the record. 20 C.F.R. § 416.927(c)(2).

Substantial evidence in the record supported the ALJ's RFC determination that Plaintiff maintained the attention and concentration to perform simple, routine, unskilled work that did not require fast assembly quota and occasional interaction with coworkers, supervisors and the general public. (T. 24.) Dr. Wike opined that despite Plaintiff's limitations he was not limited in his ability to understand, remember, and carry out very short and simple instructions. (T. 462.) Further, Dr. Wike opined that Plaintiff was "limited but satisfactory" in his ability to maintain attention for two hour segments, sustain an ordinary routine, maintain regular attendance, and remember work like procedures. (*Id.*) Dr. Caldwell opined that Plaintiff was able to maintain attention and concentration. (T. 386.) Further, notations in the record indicated that Plaintiff's medications; Trazodone, Geodon and Zoloft, were working well. (T. 373.)

Objective mental status observations further supported the ALJ's mental RFC. On March 27, 2012, Dr. Wike observed that Plaintiff was cooperative with an anxious and blunt affect; his thought processes were clear flowing; his judgment was realistic; and his insight was appropriate. (T. 376.) In June, July, and August of 2012, Dr. Wike repeated the notation that Plaintiff displayed depersonalization and depression during

the encounter. (T. 449-454.) In September of 2012, Plaintiff reported increased anxiety, but denied depression; Dr. Wike noted that Plaintiff was feeling "less than optimal" and hoped that the hunting season would improve his spirits . (T. 445-446.) In October of 2012, Plaintiff denied increased depression or anxiety and Dr. Wike repeated his September 2012 notation that Plaintiff was feeling "less than optimal" and hoped that the hunting season would improve his spirits. (T. 443.) In November of 2012, Plaintiff denied increased anxiety and depression and informed Dr. Wike his mood had been stable. (T. 441.)

In January and February of 2013, Plaintiff reported increased depression and anxiety due to the holidays, which were "always tough," and the death of a family member. (T. 430-432.) In March of 2013, Plaintiff denied increased anxiety and depression and Dr. Wike noted that Plaintiff's mental impairments were "[d]oing reasonably well on current treatment." (T. 428-429.) Plaintiff informed Dr. Wike in May of 2013, that he spent most of his days fishing, he also denied increased anxiety and depression at that time. (T. 422.) On July 15, 2013, Dr. Wike observed that Plaintiff was cooperative, his speech was clear and coherent, his associative thinking was intact, his judgment was realistic, and his insight was appropriate. (T. 420.) Plaintiff informed Dr. Wike in September of 2013 that his mood was "more or less stable," and he felt "in a fog" on his medication, but he hoped hunting season would "motivate" him. (T. 418.)

Therefore, the ALJ properly adhered to the Regulations in making her mental RFC determination and substantial evidence supported the determination. For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's RFC determination be upheld.

### B.    The ALJ's Step Five Determination

Plaintiff argues that the ALJ erred in her step five analysis because the hypothetical posed to the VE at the hearing contained errors due to the ALJ's improper evaluation of the opinion evidence in the record.  (Dkt. No. 16 at 17 [Pl.'s Mem. of Law].)

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        October 24, 2016

_____

William B. Mitchell Carter
U.S. Magistrate Judge